IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ALEXANDER JOSEPH VAVRINEK<br><br>*Plaintiff*<br><br>-against-<br><br>ROSEANN VAVRINEK; THE CATHOLIC BISHOP OF CHICAGO, a corporation sole, CARDINAL FRANCIS GEORGE, and REVEREND MONSIGNOR PATRICK J. POLLARD<br><br>*Defendants* | § § § § § § § § § § § § § § § § § | Civil Action No:<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

The Plaintiff, Alexander Joseph Vavrinek, for his complaint against the Defendants, allege upon information and belief as follows:

### NATURE OF THE CASE

1. This action is for a declaratory and injunctive relief. Specifically, this action seeks declarations that Plaintiff, Alexander Vavrinek is a citizen of the United States by reason of being the son of Joseph Anthony Vavrinek (deceased), that Plaintiff is entitled to be issued a United States Passport by reason of being a citizen of the United States, that said Passport can only be issued upon DNA proof that Plaintiff is the son of Joseph Vavrinek (deceased), that such DNA proof can only be established by a limited disinterment of the remains of Joseph Vavrinek (deceased), that Joseph Vavrinek (deceased) was interred at the Holy Sepulchre Catholic cemetery, operated by the Catholic Cemeteries ( a department of the Catholic Bishop of Chicago, a corporation sole, also known as the Archdiocese of Chicago, an ecclesiastical entity of the Roman Catholic Church), that Roseann Vavrinek is the only known surviving heir of Joseph

Vavrinek (deceased) at this time, that Roseann Vavrinek is the only person legally competent to authorize the limited disinterment of Joseph Vavrinek (deceased) for the purpose of DNA testing, that Roseann Vavrinek has been in regular contact with the Plaintiff and has publicly acknowledged that Plaintiff is the son of Joseph Vavrinek (deceased), that Roseann Vavrinek has refused to authorize the disinterment of Joseph Vavrinek (deceased) for DNA testing, that unless this Court orders said disinterment and DNA testing, Plaintiff would be unable to prove his status as the son Joseph Vavrinek (deceased) and thereby be denied of his right of Citizenship of the United States as well as a United States Passport, that consequently this Court should enjoin and order the defendants to allow a limited disinterment of Joseph Vavrinek (deceased) to enable DNA testing for purposes of proving Plaintiff's status as a son of Joseph Vavrinek. That upon DNA proof that Plaintiff is the son of Joseph Vavrinek, Plaintiff should be immediately issued a United States Passport and be officially recognized as a citizen of the United States with all rights and privileges of Citizenship accruing thereto. The Plaintiff also seeks damages for severe injury, emotional distress, anguish and pain suffered by Plaintiff as a result of defendants' actions.

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201 and 28 U.S.C. § 2202 as this is a civil action seeking injunctive and declaratory relief. Jurisdiction in this Court also vests pursuant to 28 U.S.C. § 1332 as this is a civil action where the amount in controversy exceeds the value of $75,000 and is between the Plaintiff, presently a subject of Nigeria and the defendants, citizens of Illinois and of the United States.

## VENUE AND PARTIES

3. Venue is proper pursuant to 28 U.S.C. § 1391(a) because Plaintiff, Alexander Vavrinek is an individual, a subject of Nigeria, resident in Lagos Nigeria.

4. Defendant, Roseann Vavrinek, ("Roseann") an individual, is and was at all material times, a resident of Cook County in the State of Illinois, within the Northern District of Illinois.

5. The Catholic Bishop of Chicago, a corporation sole, is and was at all relevant times an Illinois corporation. The Catholic Bishop of Chicago, a corporation sole, is also known as the Archdiocese of Chicago, an ecclesiastical entity of the Roman Catholic Church (hereafter the "Archdiocese of Chicago" or "Archdiocese.").

6. At all times material to the complaint, the Archdiocese of Chicago was conducting business in the State of Illinois, with its principal place of business in Cook County, Illinois.

7. Defendant Cardinal Francis George ("Cardinal George") is and was at all relevant times the head of the Archdiocese. Cardinal George is and was the local agent of the Roman Catholic Church appointed by the Pope. As chief operating officer and ordinary of the Archdiocese, Cardinal George has ultimate authority and responsibility for and at all times relevant had complete control over all matters within the Archdiocese, including the administration of the Catholic Cemeteries of Chicago Archdiocese, a department of the Archdiocese. Both the Archdiocese of Chicago and Cardinal George are resident within the Northern District of Illinois.

8. Reverend Monsignor Patrick J. Pollard, ("Reverend Pollard") is and was at all relevant times, the Director of Cemeteries of the Catholic Cemeteries for the Archdiocese of

3

Chicago. As Director, Reverend Pollard is responsible for the administration and management of Catholic Cemeteries in the Archdiocese of Chicago. This also includes the Holy Sepulchre Cemetery in Worth, Illinois, the burial place where the remains of Joseph Vavrinek (deceased) are presently interred. Reverend Pollard is resident within the Northern District of Illinois.

9. Plaintiff, Alexander Vavrinek (herein 'Alexander') was born on October 17, 1944. Alexander's father was Joseph Vavrinek of Midlothian, Illinois, (herein "Joseph") while his mother was Edna Atkinson Khanji (herein "Edna")

10. Edna was the only daughter of Mr. Edward Atkinson, a British citizen while Edna's mother was Madam Mary Ekanem, a Nigerian citizen (herein "Mary").

11. At the time Alexander was born, his father Joseph was a Staff Sergeant in the United States Army. He was a member of the American Contingent stationed in Apapa, Lagos, Nigeria during the Second World War.

12. About the time of my Alexander's birth, Joseph was transferred away to Liberia. However, because of his affection and love for Edna and Alexander, Joseph wrote several letters and forwarded a Christmas card and gifts to Edna, acknowledging Alexander as his son and promised to visit with them as soon as he settled down in the United States.

13. Edna subsequently lost contact with Joseph. She later got married to one Ahmed Khanji, a Lebanese citizen, in Ghana, in 1953.

14. As Alexander grew into a young man he was presented with a medallion left behind for him by Joseph. The front side of the medallion read "Member - The First Catholic Slovak Union USA, J. VAVRINEK fighting for God and Country in the Armed Forces of the USA 1942." The back side of the medallion read "Patroness of U.S.A. Protect me immaculate conception BVM".

15. Alexander became determined to know and to find his father. With limited information from Edna and Mary, Alexander wrote several personal letters to the last known address of Joseph between 1960 and 1963. While Alexander received no responses to such letters, a few of them were returned to him as undelivered. Nothing happened thereafter.

16. Still determined to know and find his father, Alexander approached the American Embassy in Nigeria in 1963 and upon persistent inquiries, he was requested to produce the following documents:

(a) The Christmas card from Joseph addressed to Edna.

(b) Joseph's photograph.
(c) Processing fees for an American passport.

17. Alexander produced and submitted said documents to the Embassy of the United States in Nigeria. Upon submitting the said documents, the Embassy immediately seized the Christmas card and has refused to release it ever since. However, a photocopy of the said card shall be relied on during this trial.

18. Alexander was subsequently issued with an Alien Registration Card Number A13-384-423 and a Social Security Card No. 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.

19. By letter dated January 18, 1967, Alexander was also requested to report to the Selective Service System, pursuant to the Universal Military Training and Service Act. Alexander could not register at the time because he had to look after his mother who was very ill in Nigeria, because he was her only child. All this while, despite receiving an Alien Registration card, no-one was willing to volunteer information to Alexander regarding Joseph's place of abode or domicile. Alexander was frustrated and heartbroken. He continued to try, but received no help. By letter dated June 10, 1988, he petitioned the United States Ambassador in Nigeria, but received no help.

20. Finally, in 1992, Alexander became aware of the work of the Missing Persons Service of the Salvation Army, based in Des Planes, Illinois. Alexander contacted them and having discussed his plight, Salvation Army agreed to help him search for Joseph.

21. By letter dated December 21, 1992, addressed to Alexander, he (Alexander) was informed for the first time that Joseph died in 1981 but left behind a daughter, defendant Roseann. By said letter, Salvation Army indicated that Roseann had communicated to them knowledge of Alexander's existence which Roseann discovered while sorting through Joseph's personal papers during probate. Alexander also obtained a copy of Joseph's birth certificate and memorial.

22. In the meantime, Mary died in Nigeria on February 23, 1992 while Edna died in Nigeria in May 2006, leaving Alexander even more determined and desperate to know and reunite with Joseph's family in the United States.

23. By letters dated April 23, 1994 and July 8, 1994, Roseann wrote to Alexander, acknowledging his striking resemblance to Joseph. She also acknowledged that Joseph's sister, Molly (herein "Molly") cried upon knowing that Alexander only found information about Joseph after Joseph's death.

24. Again, by letter dated March 27, 1995, Roseann wrote the American Embassy in Nigeria acknowledging that Alexander was Joseph's son, indicating her wish that Alexander be allowed to visit the United States to re-unite with the Vavrinek family and requesting that travel documents be provided for him. Despite the above letter, the embassy gave no response.

24. Roseann also wrote similar letters to the United States Embassy in Nigeria dated March 27, 1995, and January 29, 2009. Again, the embassy did not respond.

25. Upon information and belief, Plaintiff, Alexander has been denied his right of

Citizenship of the United States, despite the following:

 (a) Evidence of acknowledgment of Paternity by Joseph during his lifetime by Christmas cards and letters sent to Edna asking after "the baby"

 (b) Letters and other evidence discovered upon Joseph's death by Roseann.

 (c) Letters and documents from agencies of the United States Government as follows:

  (i) Alien Registration Card.

  (ii) Social Security Card.

  (iii) Request to join the Selective Service Systems.

 (d) Acknowledgment from Roseann that Alexander is her only sibling and the need for him to reunite with his family.

 26. By letter of October 5, 2011, Alexander petitioned the Attorney General of the United States, seeking an administrative review of his case. By letter dated October 27, 2011, one Randy Wilson, an officer of the United States Department of Justice, advised that Alexander should contact the Office of the Executive Secretariat, Department of Homeland Security to resolve this matter.

 27. Alexander, through his counsel, also petitioned the office of the Executive Secretariat. By letter dated November 25, 2011, said office, recommended that the most viable option for Alexander to obtain citizenship under the United States Constitution, based on "*jus sanguinis*" was to have him apply for a United States Passport. The office of the Executive Secretariat also advised that because Joseph was now deceased and did not register his son's birth at the U.S. Embassy in Nigeria, Alexander would have to contact a United States Citizenship and Immigration Service (USCIS) accredited parentage testing laboratory regarding how to obtain proof of parentage as Joseph's son. Said office also enclosed a list of parentage

testing laboratories for plaintiff's review and reference.

28. Alexander has since made telephone contact with said parentage testing laboratory for Indianapolis, near Chicago and that of Minneapolis, Minnesota, requesting proof of parentage. Both labs advise that the only way such parentage can be proved is by DNA testing through a limited disinterment of the remains of Joseph Vavrinek. Alexander also applied for a U.S. passport and was advised that such passport would be processed only upon proof of parentage by DNA testing.

29. At the present time, the remains of Joseph Vavrinek are interred at the Holy Sepulchre cemetary in Worth, Illinois under the control of the Catholic Cemeteries owned and managed by Defendants, Archdiocese, Cardinal George and Reverend Pollard. Roseann is the only known heir regarding the estate of Joseph Vavrinek.

30. By e-mails and letters addressed to Roseann, Alexander requested that Roseann authorize a limited disinterment of Joseph's remains for DNA testing at Alexander's expense. Till date, Roseann has refused to authorize said disinterment.

31. By letter dated March 12, 2012, addressed to Catholic Cemeteries, Alexander by counsel, requested policies and procedures for the limited disinterment of Joseph. By letter dated March 23, 2012, said catholic cemeteries have advised that such disinterment can only be done if authorized by Roseann

32. Thus, unless this court orders said disinterment, Plaintiff would be unable to prove his parentage to Joseph and thus would be denied his constitutional rights as a citizen of the United States, including his right to a United States Passport.

33. Plaintiff, Alexander has been subjected to severe mental stress, emotional distress, anguish and pain as a result of defendant's unreasonable refusal to allow said DNA testing, thus

separating Plaintiff from his family and heritage, denying him a chance to unite and connect with his father's family, denying Plaintiff's family the opportunity to discover their background and ancestry, denying Plaintiff and his family an opportunity to find meaning for their life and denying Plaintiff his right of citizenship of the United States.

34. As a direct and proximate result of defendants' actions, plaintiff has suffered severe emotional distress, mental stress and agony and is entitled to damages in the amount of $100,000.00

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment against the defendants as follows:

a. A Declaration that Plaintiff, Alexander Vavrinek is a citizen of the United States by reason of being the son of Joseph Anthony Vavrinek (deceased).

b. A Declaration that Plaintiff is entitled to be issued a United States Passport by reason of being a citizen of the United States, upon DNA proof that Plaintiff is the son of Joseph Vavrinek (deceased).

c. A Declaration that such DNA proof can only be established by a limited disinterment of the remains of Joseph Vavrinek (deceased), presently interred at the Holy Sepulchre Catholic cemetery located in Worth Illinois, operated and managed by defendants Archdiocese, Cardinal George and Reverend Pollard.

d. A Declaration that Roseann Vavrinek is at the present time, the only person legally competent to authorize the limited disinterment of Joseph Vavrinek (deceased) for the purpose of DNA testing.

e. A Declaration that Roseann Vavrinek has been in regular contact with the Plaintiff and has publicly acknowledged Plaintiff as the son of Joseph Vavrinek (deceased).

f. A Declaration that Roseann Vavrinek has refused to authorize the disinterment of Joseph Vavrinek (deceased) for DNA testing and unless the Court intervenes by making said Order, Plaintiff would be unable to prove his status as the son Joseph Vavrinek (deceased).

g. A Declaration that unless the court makes the said disinterment Order, Plaintiff would be unable to prove that he is the son of Joseph Vavrinek (deceased).

h.     A Declaration that unless the Plaintiff is allowed to prove that he is the son of Joseph Vavrinek (deceased) by DNA testing, he would be unable to vindicate his rights to U.S. citizenship and all other rights arising said status.

i.     AN Order enjoining defendants to disinter the remains of Joseph Vavrinek for DNA testing at Plaintiff's expense.

j.     AN ORDER that the result of such DNA testing be filed with this Court.

k.     AN Order that Plaintiff's DNA samples be obtained by parentage testing laboratory accredited and recognized by the Government of the United States and that the result of such testing be filed with this Court.

l.     An Order awarding damages of $100,000.00 (One Hundred Thousand Dollars) for emotional distress, mental stress and agony suffered by Plaintiff arising from defendants' actions.

m.     Costs and Disbursements of the action.

n.     Reasonable Attorney fees; and

o.     Such further and other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: April 19, 2012

Respectfully submitted,
**ERIC BOND LAW OFFICE, PLLC**

By: _____
Eric B. Anunobi
State Bar No. 0388986
2501 Blaisdell Avenue
Minneapolis, MN 55404
Telephone: (612) 729-5719
Facsimile: (612) 729-5721

**ATTORNEY FOR PLAINTIFF**