UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Alexander Joseph Vavrinek, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12-CV-02916 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| Roseann Vavrinek; The Catholic Bishop of | ) | |
| Chicago, as a corporation; Cardinal | ) | |
| Francis George; Reverend Monsignor | ) | |
| Patrick J. Pollard; United States | ) | |
| Department of State; Hillary Rodham | ) | |
| Clinton, Secretary of State; United States | ) | |
| Department of Homeland Security; and | ) | |
| Janet Napolitano, Secretary of Homeland | ) | |
| Security; | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Alexander Joseph Vavrinek filed this declaratory judgment action, pursuant to 28 U.S.C. §§ 2201, 2202, against Roseann Vavrinek; The Catholic Bishop of Chicago, Cardinal Francis George, and Reverend Monsignor Patrick J. Pollard (collectively, the Archdiocesan Defendants); and the United States Department of State, Secretary of State Hillary Rodham Clinton, the United States Department of Homeland Security, and Secretary of Homeland Security Janet Napolitano (collectively, the Federal Defendants) [R. 1]. In his Amended Complaint [R. 6], Alexander Vavrinek, who is a citizen of Nigeria, alleges that Roseann Vavrinek and the Archdiocesan Defendants have refused to allow him to disinter the remains of Joseph Vavrinek—whom Alexander Vavrinek alleges is his father—so that he can test the remains for DNA to support his bid for United States citizenship. He asks this Court

to: (1) order Roseann Vavrinek and the Archdiocesan Defendants to disinter the remains (at Plaintiff's expense), (2) order the Federal Defendants to issue him a United States passport if and when DNA evidence proves that he is the son of Joseph Vavrinek, and (3) award him $100,000 for the alleged emotional distress he has suffered as a result of Defendants' actions. Roseann Vavrinek moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) [R. 26]. Both the Archdiocesan Defendants [R. 27] and the Federal Defendants [R. 37] move to dismiss pursuant to Federal Rules of Civil Procedures 12(b)(1) and 12(b)(6). For the reasons below, all of the motions are granted.

## I. Background

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Capitol Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993) (citation omitted). In 1944, Alexander Vavrinek was born in Nigeria to Joseph Vavrinek and Edna Atkinson Khanji. R. 6, Am. Compl. ¶ 11. When Alexander was born, Joseph Vavrinek was an officer in the United States Army and was stationed in Lagos, Nigeria during World War II. *Id.* ¶ 13. Joseph was then transferred to Liberia, where he lost contact with Edna and Alexander, other than sending them gifts and writing them letters from time to time. *Id.* ¶¶ 14, 15. In these letters, including a Christmas card, Joseph acknowledged Alexander as his son and promised to visit with him and Edna as soon as Joseph settled back down in the United States. *Id.* ¶ 14; R. 40, Pl.'s Exh. 6.

In 1963, Alexander went to the American Embassy in Nigeria for help in making contact with his father, including a request (apparently) for an American passport. *See* Am. Compl. ¶ 18. The Embassy asked him to submit the Christmas card, a photograph of Joseph, and processing fees for an American passport. *Id.;* R. 41, Pl.'s Exh 8. Ultimately, the Embassy did not issue a passport to Alexander, but did issue him an Alien Registration Card and a Social Security Card. Am. Compl. ¶ 20. In 1967, Alexander was asked to register with the Selective Service System, but he did not. *Id.* ¶ 21; R. 41, Pl.'s Exh. 10.

Over the years, Alexander kept trying to find his father. In 1988, he unsuccessfully sought information from the United States Ambassador to Nigeria. *Id.* ¶ 21; R. 41, Pl.'s Exh. 11A. In 1992, he wrote the Salvation Army's Missing Persons Service for information. Am. Compl. ¶ 22. Later that year, the Salvation Army informed him that Joseph Vavrinek had died but had left behind a daughter, Roseann. *Id.* ¶ 23; R. 41, Pl.'s Exh. 12. Alexander and Roseann corresponded in several letters. *See* Am. Compl. ¶ 25; R. 42, Pl.'s Exhs. 14A-15B. Roseann also wrote the United States Embassy in Nigeria, including in January 2009, requesting that Alexander be allowed to visit the United States. Am. Compl. ¶¶ 26-27; R. 42, Pl.'s Exh. 16; R. 43, Pl.'s Exh. 17.

In 2011, Alexander sought what he calls "administrative review" of his case from the United States Attorney General. Am. Compl. ¶ 29. The Department of Justice responded, advising him to contact the Department of Homeland Security. *Id.*; R. 43, Pl.'s Exh. 20. After he petitioned the Department of Homeland Security's Office of the

3

Executive Secretariat, he received a reply from the United States Citizenship and Immigration Services instructing him to apply for a United States passport. Am. Compl. ¶ 30; R. 43, Pl.'s Exhs. 21, 21A. The letter also referred him to accredited parentage testing laboratories to discuss how to obtain proof of parentage, which was required because Joseph had not registered Alexander's birth at the United States Embassy in Nigeria before passing. Am. Compl. ¶ 30; R. 43, Pl.'s Exhs. 21, 21A. These labs in turn allegedly advised Alexander that the only way to prove parentage would be to obtain Joseph's DNA through a limited disinterment of Joseph's remains. Am. Compl. ¶ 31. Meanwhile, the Department of State rejected Alexander's passport application because he lacked proof of parentage by DNA testing. *Id.*

To resuscitate his passport application, Alexander asked Roseann (Joseph's only known heir) to authorize a limited disinterment of Joseph's remains for DNA testing. *Id.* ¶¶ 32, 33. She refused. *Id.* ¶ 33. Alexander then requested that the Archdiocesan Defendants—who own and manage the cemetery where Joseph's remains are interred—provide Alexander with information about their policies and procedures for disinterment. *Id.* ¶¶ 32, 34. The Archdiocesan Defendants advised him that disinterment required Roseann's authorization. *Id.* ¶ 34.

In filing this lawsuit, Alexander asks this Court to order Roseann and the Archdiocesan Defendants to disinter Joseph's remains for DNA testing. *Id.* at 11. He also wants to compel the Federal Defendants to issue him a United States passport "and other official recognition of United States citizenship" when he has DNA evidence confirming that Joseph is Alexander's father. *Id.* at 11. Lastly, because Alexander has

4

suffered "severe mental stress, emotional distress, anguish and pain" caused by "defendant's unreasonable refusal to allow said DNA testing," *id.* ¶ 36, he seeks damages of $100,000. *Id.* at 11.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides the procedural vehicle by which a defendant may move to dismiss a claim or suit on the ground that the court lacks jurisdiction. Fed. R. Civ. P. 12(b)(1); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Federal courts have jurisdiction, known as federal-question jurisdiction, over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under the laws of the United States within the meaning of § 1331 only when the claim for relief depends in some way on federal law as stated in a well-pleaded complaint, "unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 402 (7th Cir. 2001) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)) (internal quotation marks omitted). The plaintiff bears the burden of proving that the federal courts have subject matter jurisdiction over the action. *United Phosphorus, Ltd. v. Angus Chem.* Co., 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012).

If the case gets past the jurisdictional question, then the complaint must also adequately state a legal claim that would entitle the plaintiff to relief. Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ.
P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what
the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550
U.S. 544, 555 (2007) (quotation and citation omitted). The Seventh Circuit has
explained that this rule "reflects a liberal notice pleading regime, which is intended to
'focus litigation on the merits of a claim' rather than on technicalities that might keep
plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting
*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state
a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police
Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain
sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at
570). These allegations "must be enough to raise a right to relief above the speculative
level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption
of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S.
at 678-79.

The Rule 12(b)(6) standard also governs a motion for judgment on the pleadings
pursuant to Federal Rule of Civil Procedure 12(c). *Hayes v. City of Chicago*, 670 F.3d
810, 813 (7th Cir. 2012) (citation omitted). Taking all well-pled allegations as true and
drawing all reasonable inferences in the nonmovant's favor, the Court will grant a Rule
12(c) motion "only if it appears beyond doubt that the plaintiff cannot prove any facts

6

that would support his claim for relief." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004) (citation omitted).

## III. Analysis

The Defendants separately assert several arguments to dismiss Vavrinek's Amended Complaint. They contend that this Court lacks subject matter jurisdiction because (1) Vavrinek's supposed claims under 8 U.S.C. § 1401 and 8 U.S.C. § 1503 do not raise a federal question, and (2) without federal-question jurisdiction, Vavrinek's claim for severe emotional distress cannot meet the amount-in-controversy required for diversity jurisdiction, which is the only other possible basis for jurisdiction. They alternatively contend that his complaint should be dismissed for failure to state a claim upon which relief can be granted because he does not plausibly plead a tort claim for severe emotional distress. The Court will address each argument in turn.

## A. Subject Matter Jurisdiction

### 1. Declaratory Judgment

In his Amended Complaint, Vavrinek pleads that "this action involves a federal question pursuant to 28 U.S.C. § 1331, 8 U.S.C. § 1401, and 8 U.S.C. § 1503." Am. Compl. at 2. He also asserts that he "seeks declarations pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202." *Id.* Of course, merely saying that this action "involves a federal question pursuant to 28 U.S.C. § 1331" does not make it so; Vavrinek must explain how the complaint meets the requirements of subject matter jurisdiction. *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). Pleading that this action is brought pursuant to the Declaratory

7

Judgment Act also falls short: the Act is a *procedural* mechanism and does not independently supply subject matter jurisdiction. *DeBartolo v. Healthsouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009).Thus, federal-question jurisdiction over Vavrinek's claims is proper only if conferred by the other two statutes that he cites, namely, 8 U.S.C. § 1401 or 8 U.S.C. § 1503.

### a. 8 U.S.C. § 1401

Roseann argues 8 U.S.C. § 1401 does not provide Vavrinek with federal-question jurisdiction because he is not a United States citizen as the statute defines it.[1] *See* R. 26, Roseann's Mot. Dismiss ¶¶ 18-19. She then asserts that the facts contained in his Amended Complaint do not plausibly meet the requirements of § 1401(g). *Id.* ¶¶ 18-19. This argument appears to assess the underlying *merits* of Vavrinek's claim under § 1401(g)—a Rule 12(b)(6) undertaking—rather than whether § 1401(g) supplies a basis for subject matter jurisdiction over the case, perhaps by creating a federal cause of action. *Cf. Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916) ("A suit arises under the law that creates the cause of action.").

But even under the proper analysis, the Court concludes that Vavrinek does not have federal-question jurisdiction under § 1401(g). That statute defines the classes of people who are United States citizens by birth; as a definitional statute, it does not create an independent cause of action by which a plaintiff may ask a court to determine

---

[1] Section 1401 sets out eight classes of people who "shall be nationals and citizens of the United States at birth." 8 U.S.C. § 1401. Roseann contends that Vavrinek attempts to plead that he is a United States citizen under § 1401(g). *See* Roseann's Mot. Dismiss ¶ 18. Vavrinek does not dispute this contention.

his citizenship status. *Hassan v. Holder*, 793 F. Supp.2d 440, 447 (D.D.C. 2011); *cf.*
*United States v. Gomez-Orozco*, 188 F.3d 422, 425-26 (7th Cir. 1999) (evaluating
whether plaintiff was a United States citizen under § 1401 to determine whether he
should have pled guilty to violating 8 U.S.C. § 1326(a)). Accordingly, the Court does not
have subject matter jurisdiction to declare Vavrinek a United States citizen under 8
U.S.C. § 1401.

### b. 8 U.S.C. § 1503

Next, the Federal Defendants argue that the Court does not have federal-
question jurisdiction over Vavrinek's § 1503 claim because Vavrinek has not exhausted
his administrative remedies (but a failure to exhaust is not typically a jurisdictional
problem, as discussed below). *See* R. 37, Federal Defs.' Mot. Dismiss at 6. Remember
that Vavrinek seeks from the Federal Defendants "a United States passport and other
official recognition of United States citizenship." Am. Compl. at 11. Section 1503 of
Title 8 provides the jurisdictional basis by which a person "not within the United
States" may challenge the denial of "a right or privilege as a national of the United
States . . . by any department or independent agency." 8 U.S.C. § 1503(b). But § 1503(b)
limits this relief to two and only two categories of applicants:

> The provisions of this subsection shall be applicable only to a person who at
> some time prior to his application for the certificate of identity has been
> physically present in the United States, or to a person under sixteen years of age
> who was born abroad of a United States citizen parent.

8 U.S.C. § 1503(b). Neither of the two categories cover Vavrinek. Vavrinek does not
allege that he has ever been physically present in the United States. And he was born

in 1944, so of course he is currently older than 16. *See* Am. Compl. ¶ 11. Thus, he is not eligible for relief under the plain terms of § 1503(b).

More importantly, he has not exhausted § 1503's administrative prerequisites to filing suit. The Federal Defendants insist that this failure to exhaust is jurisdictional. *See, e.g.*, Federal Defs.' Mot. Dismiss at 6. It is not always accurate to characterize a failure-to-exhaust as a jurisdictional defect. There are two prerequisites to subject matter jurisdiction over a claim seeking benefits from an administrative agency: (1) a nonwaivable requirement that "a claim for benefits shall have been presented to the Secretary," and (2) a waivable requirement of administrative exhaustion. *Mathews v. Eldridge,* 424 U.S. 319, 328 (1976) (discussing *Weinberger v. Salfi*, 422 U.S. 749, 766-67 (1975)). So if it is true that the government can waive the exhaustion requirement to authorize a court to hear the merits of a claim, then the failure to exhaust is *not* a matter of lack of subject matter jurisdiction. *See Korsunskiy v. Gonzales*, 461 F.3d 847, 849 (7th Cir. 2006) ("Exhaustion is a condition to success in court but not a limit on the set of cases that the judiciary has been assigned to resolve."); *Abdelqadar v. Gonzales*, 413 F.3d 668, 671 (7th Cir. 2005) ("We cannot imagine any reason why an agency should be forbidden, on jurisdictional grounds, to excuse an alien's failure to exhaust a particular issue."). Nevertheless, this does not help Vavrinek here because the Federal Defendants do not waive the exhaustion requirement; quite the opposite, they insist on its enforcement. *Compare Korsunskiy*, 461 F.3d at 849 (no waiver when the agency asserts a failure to exhaust), *with Abdelqadar*, 413 F.3d at 670 (waiver when the agency briefed the issue on the merits

10

without arguing exhaustion). *See generally* Federal Defs.' Mot. Dismiss at 6-9 (asserting that this Court lacks jurisdiction because Vavrinek did not exhaust his administrative remedies).

So, in order for the Court to get to the merits of his complaint, Vavrinek still must satisfy the requirement that he exhaust administrative remedies. He has failed to do so. To exhaust, Vavrinek must first affirmatively seek proof of citizenship by filing a Form N-600 Application for Citizenship with the United States Citizenship and Immigration Services (USCIS), under 8 U.S.C. § 1452(a). *See Ortega v. Holder*, 592 F.3d 738, 740 (7th Cir. 2010); *Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 397 (5th Cir. 2007). If the application is denied, he must appeal to the USCIS's Administrative Appeals Unit. *See* 8 C.F.R. §§ 322.5(b), 103.3(a)(1)(iv); *see also Henriquez v. Ashcroft*, 269 F. Supp.2d 106, 108 (E.D.N.Y. 2003). Only after the Administrative Appeals Unit affirms the denial of the application does § 1503(b) come into play: Vavrinek must then apply for a Certificate of Identity from a U.S. consular official authorizing him to travel to a port of entry into the United States and apply for admission. 8 U.S.C. § 1503(b); *see also Bensky v. Powell*, 391 F.3d 894, 896 (7th Cir. 2004); *Benjamin v. Bureau of Customs*, 401 F. Supp.2d 184, 186 (D. Conn. 2005); *McKenzie v. INS*, 2005 WL 452371, at *5 n.5 (E.D. Pa. Feb. 23, 2005). If the U.S. consular official denies the application for a certificate of identity, Vavrinek must take the last step of submitting "a written appeal to the Secretary, stating the pertinent facts, the grounds upon which U.S. nationality is claimed and his reasons for

considering that the denial was not justified." 22 C.F.R. § 50.11(b). Vavrinek has not followed these steps, so he has failed to exhaust under § 1503(b).

Although not cited in the jurisdictional paragraph of the amended complaint, Am. Compl. ¶ 2 (citing only § 1503(b)), perhaps Vavrinek also wanted to invoke 8 U.S.C. § 1503(a), which allows anyone "within the United States" who is denied "a right or privilege as a national of the United States" to sue "the head of such department or independent agency for a judgment declaring him to be a national of the United States." 8 U.S.C. § 1503(a). Even though Vavrinek is not "within the United States," in the physical sense of location, the Supreme Court has held that even United States nationals who are located *outside* the United States may seek a declaratory judgment under this provision. *Rusk v. Cort*, 369 U.S. 367, 379 (1962), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Although § 1503(a) provides an alternative means to § 1503(b) by which an applicant may challenge the denial of his application for citizenship, it still requires a complete administrative process beginning with a Form N-600 application and culminating in (in the words of § 1503(a)) a "final administrative denial of such right or privilege." 8 U.S.C. § 1503(a); *Ortega*, 592 F.3d at 743. Only after the USCIS' Administrative Appeals Unit affirms the denial of an application for citizenship may the applicant seek a judicial declaration of citizenship under § 1503(a). *Rios-Valenzuela*, 506 F.3d at 397. Because Vavrinek has not followed these steps, he has also failed to exhaust under § 1503(a).

The steps that Vavrinek *has* taken are insufficient to exhaust administrative remedies under either § 1503(a) or § 1503(b). Vavrinek alleges that he "approached the

Nigerian Embassy in Nigeria in 1963" to obtain a passport. Am. Compl. ¶ 18. He also alleges that, in 2011, he petitioned the Attorney General, "seeking administrative review of his case," as well as the Office of the Executive Secretariat of the Department of Homeland Security, who advised him that he needed to apply for a United States passport. Am. Compl. ¶¶ 29, 30. Finally, he alleges that he did apply for a United States passport from the Department of State, but was turned down. *Id.* ¶ 31. The Federal Defendants concede that applying for a passport may be equivalent to applying for a certificate of identity. *See* R. 46, Federal Defs.' Reply at 3. It may even be equivalent to applying for Form N-600 citizenship. Even still, applying for a passport is not the end of the administrative-remedies road: Vavrinek failed to appeal the denials of a passport to the USCIS's Administrative Appeals Unit and to the Secretary of State, as sections 1503(a) and (b) respectively require.

Vavrinek believes that a formal appeal was not necessary, citing *Mathews v. Eldridge,* 424 U.S. 319 (1976). *See* R. 47, Pl.'s Surreply at 6-7. In *Mathews*, the Social Security Administration denied disability benefits sought by an applicant. The Supreme Court held that the applicant had exhausted his administrative remedies by informally appealing via the submission of a letter to the state agency charged with monitoring the plaintiff's medical condition. 424 U.S. at 324, 329. When the state agency denied his claim, the Social Security Administration accepted this decision; his claim for benefits was thus fairly presented to the then-Secretary of Health, Education, and Welfare. *Id.* at 329. Vavrinek contends that, supposedly like the benefits applicant in *Mathews*, he did exhaust by sending letters to these different agencies and

contacting their accredited DNA testing labs. Pl.'s Sur-reply at 7. This argument misses the point. Even if Vavrinek's letter-sending campaign fulfilled the first-step administrative requirement to *present* an application for a passport or for citizenship,[2] what he has not done is follow through on the administrative process and *appeal* the initial denials and obtain a *final* administrative decision. Vavrinek himself acknowledges that the Federal Defendants can waive exhaustion—but does not argue that they did. *See* Pl.'s Sur-reply at 7-8. Because Vavrinek did not exhaust his administrative remedies before bringing this lawsuit, as 8 U.S.C. § 1503 requires him to do, and the Federal Defendants have not waived this requirement, the complaint must be dismissed for failure to exhaust administrative remedies.[3]

## 2. Diversity Jurisdiction

With the federal-law claims and federal-question jurisdiction out of the picture, the next question is whether Vavrinek can rely on diversity jurisdiction for his state-law claim of severe emotional distress. The parties agree that there is complete diversity of citizenship, which 28 U.S.C. § 1332(a)(2) requires. But Roseann disputes that Vavrinek has met the $75,000 amount-in-controversy threshold. *See* Roseann's

---

[2]The Federal Defendants do not agree that Vavrinek presented his claim for benefits to the Secretary of State. In fact, they assert that they have no record that Vavrinek ever applied for a certificate of identity or a United States passport with a consular officer. *See* Federal Defs.' Reply at 3.

[3]The Court additionally notes that according to the Federal Defendants, nothing bars Vavrinek from applying for a certificate of identity or United States passport right now, and then (if unsuccessful) exhausting his administrative remedies as statutorily required. Federal Defs.' Reply at 3. Given this concession, perhaps it would be wise for Vavrinek to begin this process at the United States Embassy in Nigeria.

Mot. Dismiss ¶ 8. In his Amended Complaint, Vavrinek alleges that he "has been subjected to severe mental stress, emotional distress, anguish and pain as a result of defendant's unreasonable refusal to allow said DNA testing." Am. Compl. ¶ 36. He seeks $100,000 in damages for this emotional distress. *Id.* ¶ 37. Roseann contends that there is a "legal certainty" that Vavrinek's claim is really for less than the jurisdictional amount. Roseann's Mot. Dismiss. ¶ 8 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (internal quotation mark omitted)). Thus, she argues that his claim must be dismissed because Vavrinek cannot meet the jurisdictional minimum.

Roseann correctly identifies the legal test: "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul*, 303 U.S. at 289. As the Seventh Circuit has emphasized, "to a legal certainty" is a much different standard from others that had slipped into the case law; an allegation of the amount-in-controversy will fall short only where the law (statutory, case, or otherwise) dictates that the amount cannot be met. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) ("'Reasonable probability that jurisdiction exists,' a phrase with no provenance and no following outside this circuit, is banished from our lexicon."). If the amount in controversy is contested, the plaintiff must prove the jurisdictional facts by a preponderance of the evidence. *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (citation omitted). But once jurisdictional facts have been established, "uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the

merits) will exceed the threshold, does not justify dismissal." *Meridian*, 441 F.3d at 543.

Illinois does recognize a tort for intentional infliction of emotional distress when remains are disinterred against a family's wishes.[4] Although the tort is recognized, complaints of disinterment, as macabre as they may be, encounter skepticism in Illinois courts. *Hough v. Weber*, 560 N.E.2d 5, 8, 15, 18 (Ill. App. Ct. 1990) (affirming preliminary injunction against disinterment, but noting that "it is unclear whether plaintiff's injury could be monetarily compensated under the tort of intentional infliction of emotional distress" and that "plaintiff's damages are difficult to quantify"); *Hearon v. City of Chicago*, 510 N.E.2d 1192, 1193, 1195 (Ill. App. Ct. 1987) (widow who sued city medical officials for disinterring her husband's body and showing her the remains did not state a claim for intentional infliction of emotional distress); *cf. Courtney v. St. Joseph Hosp.*, 500 N.E.2d 703, 707 (Ill. App. Ct. 1986) ("[W]e hold that Illinois does not recognize a cause of action for emotional distress arising from the *negligent* mishandling of a corpse.") (emphasis added).

But Vavrinek is asking for the opposite of *preventing* disinterment; he wants Joseph's body to be disinterred in order to conduct the DNA test. According to

---

[4]Although Vavrinek's Amended Complaint only states that he has suffered "severe emotional distress," *see, e.g.*, Am. Compl. ¶ 37, his briefs indicate that his claim is for intentional infliction of emotional distress. *See* R. 36, Pl.'s Resp. at 15; R. 44, Pl.'s Resp. at 4. Additionally, the Amended Complaint inconsistently alternates between alleging that only Roseann committed this tort and alleging that all Defendants are responsible. Am. Compl. ¶ 36 ("[A]s a result of *defendant's* unreasonable refusal . . . ." (emphasis added)); *id.* ¶ 37 ("As a direct and proximate result of *defendants'* actions . . . ." (emphasis added)). To cover all the bases, the Court assumes that Vavrinek sought to state a claim against all of the defendants.

Vavrinek, Roseann acted as if she acknowledged and accepted that Vavrinek was Joseph's son, and yet Roseann now refuses to allow Vavrinek to establish this fact through DNA testing. For Vavrinek, this refusal prevents him from obtaining United States citizenship and from confirming a basic fact of his life, that Joseph was his father. Given the stakes, Roseann has not shown, through Illinois statutory or case law, that Vavrinek can *never* recover damages in excess of $75,000. Because the Court concludes that it is *not* a legal certainty that Vavrinek's tort claim of severe emotional distress is really for less than the jurisdictional amount, the amount-in-controversy has been sufficiently alleged, and there is diversity jurisdiction over this claim.

### B. Failure to State a Claim

Successfully showing that diversity jurisdiction applies is one thing, but stating a claim is quite another. As discussed below, the intentional infliction of emotional distress claim has not been adequately pled as to each set of defendants.

### 1. Roseann

First, Roseann argues that Vavrinek's Amended Complaint fails to state a claim against her for intentional infliction of emotional distress. Roseann's Mot. Dismiss ¶ 22. The Court agrees. To state a claim for intentional infliction of emotional distress in Illinois, a plaintiff must allege that (1) the conduct involved was truly extreme and outrageous; (2) the actor either intended to inflict severe emotional distress, or disregarded at least a high probability that his conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). The conduct must be "so outrageous in character

and so extreme in nature as to go beyond all possible bounds of decency," and "the emotional distress from which plaintiff suffers [must be] so severe that no reasonable person could be expected to endure it." *Hough*, 560 N.E.2d at 15. "[T]he tort of intentional infliction of emotional distress has been construed very narrowly, and it is a very difficult tort to prove." *Tobias v. Winkler*, 509 N.E.2d 1050, 1057 (Ill. App. Ct. 1987).

Roseann argues that the conduct Vavrinek complains of was not extreme or outrageous, and any resulting distress was not unreasonably severe. *See* Roseann's Mot. Dismiss ¶ 22. Examples of extreme or outrageous conduct resulting in severe emotional distress include broadcasting statements implying that a radio guest's wife was "so hideous that no one would marry her except under duress" and that his wife and child "had deformed heads" after being told that the wife and child suffered from a serious neurological disorder "commonly known as Elephant Man disease." *Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 204, 205, 212 (Ill. 1992). They also include a pattern of spousal abuse "combin[ing] more than a decade of verbal insults and humiliations with episodes where freedom of movement was deprived and where physical injury was often inflicted," causing the spouse to suffer depression and Post-Traumatic Stress Disorder. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83-84 (Ill. 2003) (citation omitted). They do not include requesting that a widow view her husband's exhumed remains for identification purposes. *Hearon*, 510 N.E.2d at 1195.

This case is much closer to *Hearon* than it is to *Kolegas* or *Feltmeier*. Here, Vavrinek alleges that Roseann "unreasonabl[y] refus[ed] to allow . . . DNA testing."

18

Am. Compl. ¶ 36. For two reasons, that alleged behavior does not adequately state a claim. First, even if Roseann had acted *unreasonably* in refusing to allow the disinterment, Vavrinek has alleged no facts that meet the high bar for alleging that someone acted *outrageously*, as defined by Illinois courts. He does not even allege that she insulted, taunted, or humiliated him, as in *Kolegas* and *Feltmeier*. Second, Vavrinek does not plead that Roseann *intended* him to suffer severe emotional distress, or even disregarded a high probability that severe emotional distress would follow. Although Vavrinek filed two letters from Roseann as exhibits, the two letters do not hint that Roseann had any awareness about his mental state. *See* Pl.'s Exhs. 14A-15B.[5] Thus, he has not plausibly pled that Roseann had the same level of mental culpability as had the defendants in *Kolegas,* who were actually told that the plaintiff's wife and child suffered from a disfiguring neurological disorder but mocked them anyways. Accordingly, the Court grants Roseann's motion to dismiss the intentional infliction of emotional distress tort claim.

### 2. Archdiocesan Defendants

For the same reasons that Vavrinek has not stated a claim for intentional infliction of emotional distress against Roseann, Vavrinek has not stated a claim for

---

[5]In considering a motion to dismiss, a court may review exhibits attached to the complaint without converting the motion to one for summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Although Vavrinek filed his exhibits about five months after filing his Amended Complaint (so they were not, strictly speaking, attached to the Amended Complaint), *see* R. 40-43, his Amended Complaint does refer to the documents contained in the exhibits. And Defendants do not object to Vavrinek's use of the exhibits in responding to their motions to dismiss. Accordingly, the Court need not convert Defendants' motions to dismiss into motions for summary judgment.

the same tort against the Archdiocesan Defendants. The only action that Vavrinek alleges they committed is advising him that "disinterment can only be done if authorized by Roseann" after he asked for their "policies and procedures." Am. Compl. ¶ 34. This policy does not come close to being so outrageous in character and so extreme in nature as to go beyond all possible bounds of decency. Nor has he alleged that they advised him of their policies and procedures with any intent to cause him severe emotional distress. And because Vavrinek has not pled that Cardinal George and Monsignor Pollard were personally involved, they could not have committed a tortious act against him. Accordingly, the Court dismisses Vavrinek's intentional infliction of emotional distress claim against the Archdiocesan Defendants.

### 3. Federal Defendants

Finally, Vavrinek cannot obtain relief against the Federal Defendants for this tort claim. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), and the Federal Defendants contend that they have not waived sovereign immunity. Federal Defs.' Mot. Dismiss at 12 n.4. But the Federal Tort Claims Act (FTCA) waives the sovereign immunity of the United States, making it as liable in tort as a "private individual under like circumstances." 28 U.S.C. § 2674; *Clark v. United States*, 326 F.3d 911, 912-13 (7th Cir. 2003). The FTCA would allow Vavrinek to sue the Federal Defendants for an intentional tort. *Duffy v. United States,* 966 F.2d 307, 313 (7th Cir. 1992). But any FTCA claim against the Federal Defendants for intentional infliction of emotional distress fails for similar reasons discussed above. Any alleged denial of a United States

passport or citizenship, *see, e.g.*, Am. Compl. ¶ 31, was not extreme or outrageous conduct beyond the bounds of decency. Indeed, none of the correspondence from the Federal Defendants that Vavrinek filed as exhibits contain extreme or outrageous insults or statements. *See* Pl.'s Exhs. 8, 10, 20-22A. And Vavrinek has not pled that they denied him a United States passport or citizenship intending to cause severe emotional distress. The Court notes that this failure to state a claim under the FTCA might require dismissal on jurisdictional grounds rather than for failure to state a claim. *See Collins v. United States*, 564 F.3d 833, 837 (7th Cir. 2009) ("[T]he cases that hold that defenses to the government's liability under the Tort Claims Act are jurisdictional . . . treat it as an automatic corollary of the Act's constituting a waiver of the federal government's sovereign immunity from suit. We cannot see what that has to do with jurisdiction."). Either way, the Court dismisses the intentional infliction of emotional distress claim against the Federal Defendants.

### C. 8 U.S.C. § 1401

Finally, for the sake of completeness, the Court addresses whether, assuming that there is a federal cause of action under 8 U.S.C. § 1401, Vavrinek had adequately stated a claim under that statute. The current version of § 1401[6] provides that

---

[6]The applicable law for transmitting citizenship to an individual born abroad when one parent is a United States citizen is the statute that was in effect at the time of the child's birth. *See, e.g.*, *Gomez-Orozco*, 188 F.3d at 426. The law in effect at the time of Vavrinek's birth on October 17, 1944 was section 201(g) of the Nationality Act of 1940, 54 Stat. 1138-39. The only difference between that statute and the current § 1401(g) is that the individual's citizen parent must have had "ten years' residence in the United States . . . at least five of which were after attaining the age of sixteen years." *Rodriguez-Romero v. INS*, 434 F.2d 1022, 1023 (9th Cir. 1970). This difference is immaterial to the Court's analysis.

> a person born outside the geographical limits of the United States . . . of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States . . . for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years

is a United States national and citizen at birth. 8 U.S.C. § 1401(g); *see also Miller v. Albright*, 523 U.S. 420, 430 (1998).

Section 1401(g) applies only to individuals born outside the United States to married parents, *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 59 (2001), and Vavrinek has not pled that Joseph and his mother were ever married. But under 8 U.S.C. § 1409, § 1401(g) applies to individuals born out of wedlock if:

> (1) a blood relationship between the person and the father is established by clear and convincing evidence,

> (2) the father had the nationality of the United States at the time of the person's birth,

> (3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and

> (4) while the person is under the age of 18 years—

>> (A) the person is legitimated under the law of the person's residence or domicile,

>> (B) the father acknowledges paternity of the person in writing under oath, or

>> (C) the paternity of the person is established by adjudication of a competent court.

8 U.S.C. § 1409(a). These requirements are strictly applied. *See Tuan Anh Nguyen*, 533 U.S. at 71.

22

Vavrinek has not plausibly pled that he satisfies the requirements of 8 U.S.C. § 1409. Although Vavrinek pled that Joseph "promised to visit with them as soon as he settled down in the United States," Am. Compl. ¶ 14, the complaint does not allege that Joseph ever agreed in writing, before his death, to provide financial support for Vavrinek until Vavrinek reached 18 years old. 8 U.S.C. § 1409(a)(3). Indeed, Vavrinek and his mother "subsequently lost contact with Joseph" shortly after his birth. Am. Compl. ¶ 15. And despite pleading that Joseph acknowledged paternity in letters to his mother, Am. Compl. ¶ 14, Vavrinek has not pled that Joseph acknowledged paternity in writing *under oath*. 8 U.S.C. § 1409(a)(4)(B). It is true that § 1409(b) applies § 1401(g) to children "born out of wedlock on or after January 13, 1941, and before December 24, 1952, as of the date of birth, if the paternity of such child is established at any time while such child is under the age of twenty-one years by legitimation," 8 U.S.C. § 1409(b), and Vavrinek was born in that specified window of time. But even then he has not pled that his paternity was established while he was younger than 21. Thus, even if there is such a thing as a federal cause of action under 8 U.S.C. § 1401, the Court dismisses it for failure to state a claim upon which relief can be granted.

## IV. Conclusion

For the reasons discussed above, the Court grants Defendants' motions to dismiss [R. 26, 27, 37].

ENTERED:

_____
Honorable Edmond E. Chang
United States District Judge

DATE: February 21, 2013